Dated this 25 day of February, 1987.

**In the Matter of the Arbitration between Peter N. SALZARULO, as President of Local Union No. 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Petitioner,**

**and**

**THOMAS S. BROWN ASSOCIATES, INC., Respondent.**

**No. 86 Civ. 6453 (MEL).**

United States District Court, S.D. New York.

Feb. 25, 1987.

Kennedy & Casey, P.C., Garden City, N.Y., for petitioner; Stanley Q. Casey, of counsel.

Putney, Twombly, Hall & Hirson, New York City, for respondent/cross-petitioner; Daniel T. Campbell, of counsel.

LASKER, District Judge.

Peter Salzarulo, as President of Local Union No. 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (hereafter "Local 2"), petitions pursuant to 9 U.S.C. § 9 (1982) to

confirm an arbitration award issued on April 21, 1986. The subject of the arbitration was a grievance by Local 2 against Thomas S. Brown Associates, Inc. ("Brown"), an installer of pneumatic heating and cooling control systems in the New York area. Brown opposes confirmation of the arbitration award and cross-petitions to vacate the award.

### I.

Local 2 is a party to a collective bargaining agreement with the Association of Contracting Plumbers of the City of New York dated June 26, 1985 (the "Local Agreement"). Paragraph 42 of the Local Agreement prescribes, among other things, the working hours for the maintenance and service of pneumatic heating or cooling control systems incident to their installation during the construction period.[1] Brown is not a member of the Association of Contracting Plumbers of the City of New York and is not otherwise a party to the Local Agreement. Brown is a signatory to the National Pneumatic Control Systems Agreement (the "National Agreement"), a collective bargaining agreement between the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada and the Pneumatic Control Systems Council. Article IX of the National Agreement, entitled "Wages and Hours of Work," provides that

(1) For employees covered by this Agreement, wage rates, ... hours of work, shifts, shift premiums, overtime, [and] overtime premiums ... shall be in accordance with those established for all employees in local agreements, negotiated by the local union of the United Association and the historically recognized local Contractor's bargaining group.[2]

Brown concedes that it is thereby obligated to look to the Local Agreement for rates of pay and wages.[3]

The National Agreement also contains jurisdictional provisions which determine the manner in which grievances shall be resolved. Paragraph 49 states:

Where a disagreement exists between the Employer and a local union concerning the meaning, interpretation, or operation of the applicable terms of the local agreement, it shall be resolved in accordance with the grievance procedure covered in the local agreement.

Paragraph 51 states:

Where a disagreement exists between the Employer and a local union concerning whether or not a given provision of the local agreement should apply, or regarding the intent, meaning, application, or compliance with the terms of this Agreement, it shall be resolved in accordance with the grievance procedure covered in this Article.

Moreover, the National Agreement provides in paragraph 59:

Where there is a conflict in meaning, interpretation, or application between this and local agreements, this Agreement shall apply.

The Local Agreement and the National Agreement each contains a distinct mechanism for arbitrating disputes.[4]

Local 2 claimed in early 1986 that Brown was in violation of the Local Agreement by

---

1. Paragraph 42 provides in pertinent part:
   *PNEUMATIC SYSTEMS:* When a member of the Association signatory to this contract or an independent contractor adhering to the terms of this contract installs a pneumatic system for heating or cooling control, the maintenance and servicing of this system during the construction period shall be performed by members of Local 2, hired in accordance with the provisions of Paragraphs 63, 64 and 65 hereof. The hours of maintenance and delivery shall be:
   One (1) hour before the established job starting time and three (3) hours after the estab-

   lished quitting time. 8 work hours on Saturdays, Sundays and Holidays.
   Exhibit D to Answer and Cross-Petition (Sept. 16, 1986).

2. Exhibit B to Answer and Cross-Petition at ¶ 35(1).

3. Affidavit of Thomas S. Brown at ¶ 18 (Sept. 15, 1986), Exhibit A to Answer and Cross-Petition.

4. *See* Local Agreement ¶ 88, Exhibit D to Answer and Cross-Petition; National Agreement ¶¶ 52–54, Exhibit B to Answer and Cross-Petition.

its continuing failure to pay the required wages and benefits in connection with the installation of a pneumatic control system in a building located on 52nd Street between Park and Madison Avenues in Manhattan. Brown was notified by mail that Local 2 had requested an Executive Committee hearing pursuant to Paragraph 88 of the Local Agreement for the arbitration of its grievance and that such hearing was scheduled for March 11, 1986.[5] Brown acknowledged receipt of the hearing notice but stated that it would not attend the hearing because it did not agree that the Local Agreement applied but rather believed that the National Agreement grievance procedures should be followed.[6] The hearing proceeded *ex. parte* on March 11, and on April 21, the Executive Committee issued a written decision in which the arbitrators determined that "the Local Agreement arbitration proceedings were the proper and controlling grievance procedures to settle the dispute between the parties and that Thomas Brown had, pursuant to the National Agreement, agreed to be bound to the Local grievance procedures to settle this dispute."[7] The decision found that Brown had failed to comply with Paragraph 42 of the Local Agreement, required Brown to employ members of Local 2 to maintain the pneumatic heating system at the 52nd Street construction site "one (1) hour before the established job starting time and then three (3) hours after the established quitting time and eight (8) hours on Saturdays, Sundays and Holidays," and directed Brown to pay back wages and fringe benefits to certain members of Local 2. It is this award which Local 2 now moves to confirm and which Brown cross-moves to vacate.

## II.

Local 2 argues that the grievance procedures prescribed in the Local Agreement

were the proper vehicle for the arbitration of its dispute with Brown because the National Agreement to which Brown is a signatory (1) provides in Article IX that wages and hours of work are to be determined by reference to the Local Agreement and (2) provides in Paragraph 49 that where a disagreement exists between an employer and a local union about the meaning, interpretation, or operation of the applicable terms of the Local Agreement it should be resolved according to the Local Agreement's grievance procedures. Local 2 contends that Brown itself admits that it must look to the Local Agreement for provisions governing wages and hours and that the subject of the dispute between the parties is covered by Paragraph 42 of the Local Agreement. Consequently, according to Local 2, the only dispute between Brown and the union is over the meaning of Paragraph 42 of the Local Agreement, and the National Agreement clearly directs that such a disagreement be submitted to arbitration under the Local Agreement arbitration procedures.

Brown opposes confirmation of the arbitration award on two grounds. First, Brown argues that its dispute with Local 2 is not merely over the meaning of the wage and hour provisions in Paragraph 42 of the Local Agreement but instead concerns conflicts between the provisions of the Local and National Agreements which throw into doubt the applicability of the Local Agreement and thus require resolution under the grievance procedure contained in the National Agreement. Brown cites three provisions of the National Agreement which it contends conflict with the hour and shift requirements of Pagraph 42 of the Local Agreement:

> *Article VIII, ¶ 32(2):* There shall be no standby crew nor featherbedding practice.

**5.** Letter from John O'Donnell to Thomas Brown (Feb. 27, 1986), Exhibit D to Notice of Petition to Confirm Arbitration Award.

**6.** Letter from Thomas S. Brown to John O'Donnell (March 3, 1986), Exhibit C to Notice of Petition to Confirm Arbitration Award.

**7.** Final Arbitration Award, Exhibit E to Notice of Petition to Confirm Arbitration Award.

*Appendix A, Work Rule F:* Slow-downs, standby crews and featherbedding practices will not be tolerated.

*Appendix A, Work Rule J:* It is agreed that overtime is undesirable and not in the best interest of the industry or the craftsmen. Therefore, except in an unusual circumstance, overtime will not be worked. Where unusual circumstances demand overtime, such overtime will be kept at a minimum.[8]

Brown argues that Paragraph 42 of the Local Agreement requires employers to pay a union member for four hours on weekdays and eight hours on weekends and holidays for time not worked, at a rate of pay which is double the hourly wage—practices which are prohibited by the National Agreement. Consequently, Brown contends, the dispute between it and Local 2 concerns whether or not a provision of the Local Agreement should apply and the intent, meaning, application, and compliance with the terms of the National Agreement, which under Paragraphs 51 and 59 of the National Agreement must be resolved under the National Agreement's grievance procedures.

Brown also alleges that the award was defective because several provisions in Paragraph 88 of the Local Agreement, which governs arbitration of disputes arising out of that agreement, were either ignored or violated.[9]

## III.

■ The central question in this case is jurisdictional in nature: Under which grievance procedures—those provided by the Local Agreement or the National Agreement—ought the dispute between Brown and Local 2 to be arbitrated? But there is a question which is logically prior to that one: Who should resolve the jurisdictional question—the national or the local arbitration body?[10] The only question this court need answer is the second, and it seems clear for at least two reasons that the jurisdictional determination should have been made in the first instance under the National Agreement's grievance procedures, not those of the Local Agreement.

First, Brown is a party only to the National Agreement and thus has contracted to submit disputes to arbitration only under the National Agreement, with the exception of disputes concerning those subjects covered by local agreements which are derivatively incorporated in the National Agreement. Here, although the National Agreement incorporated by reference the Local Agreement's provisions as to wages and hours, Brown makes more than a colorable claim that apparent conflicts between certain provisions of the National Agreement and Paragraph 42 of the Local Agreement create doubt as to the application of the Local Agreement's hour and shift provisions and that Paragraph 51 of the National Agreement therefore requires arbitration of this dispute under the national grievance procedures. Consequently, Brown has a contractual right to have this substantial jurisdictional question decided under the National Agreement's provisions, even if the result is that the National Agreement's arbitrators ultimately agree with Local 2 and the arbitrators who rendered the instant award that Paragraph 49 of the National Agreement governs and requires arbitration under the Local Agreement's grievance procedures.

---

8. Exhibit B to Answer and Cross-Petition.

9. Brown charges (1) that the Executive Committee did not decide the dispute within ten business days and Brown was not notified of this, thereby depriving it of its right under Paragraph 88 of the Local Agreement to bring the case to the Full Committee, and (2) that one member of the Executive Committee, the arbitration panel that rendered the award, was a Business Agent of Local 2, thereby violating Paragraph 88's directive that "[n]either representative [of the Executive Committee] shall be the complainant nor the defendant." *See* Exhibit D to Answer and Cross-Petition at ¶ 88.

10. Even the arbitrators who rendered the challenged award understood jurisdiction to be a threshold issue, as demonstrated by the fact that the first two findings made in their decision concerned their jurisdiction to hear the matter and the propriety of applying the Local Agreement's grievance procedures to settle the dispute between the parties. *See* Exhibit E to Notice of Petition to Confirm Arbitration Award.

A second reason that the jurisdictional question should have been submitted to the National Agreement's arbitrators is that, by analogy to the principle of primary jurisdiction, it is the national body that should in the first instance interpret the National Agreement's jurisdictional provisions.

Decision as to Local 2's petition to confirm and Brown's cross-petition to vacate the April 21, 1986 arbitration award is reserved pending a determination by the national arbitrators of whether the dispute between Brown and Local 2 should be resolved under the National Agreement's or the Local Agreement's grievance procedures.[11]

It is so ordered.

---

11. Because this determination is based on the jurisdictional objections raised by Brown, it is not necessary to reach Brown's arguments regarding the procedural irregularities in the arbitration.